IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JOE HOUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 1-99-1306 |
| | ) |
| CITY OF JACKSON and THE | ) |
| JACKSON POLICE DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Joe House has filed a complaint against Defendants City of Jackson and the Jackson Police Department alleging that he was unlawfully discriminated against in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq*. Defendants have filed a motion for summary judgment in which they claim that Plaintiff is not a "qualified individual with a disability" pursuant to the ADA. Plaintiff has responded to Defendants' motion, and Defendants have replied to Plaintiff's response. Additionally, Plaintiff was granted leave to file a supplemental response. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the

nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Anderson, 477 U.S. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

Plaintiff Joe House began his service with the Jackson Police Department as a patrol officer in 1990. (House Depo. at 28). In 1997, Plaintiff was first-on-the-scene at an ongoing crime, and after hearing gunshots, Plaintiff believed that the suspected criminal had shot at him. Id. at 40-45. Plaintiff claims that after this incident he began to experience certain mental and

physical problems at various times when he would receive calls involving a suspect with a gun or high stress situations. Id. at 45-46. Specifically, Plaintiff admits that he began experiencing problems with his memory. (Defs.' Statement of Undisputed Facts ¶ 5; Pl.'s Resp. at 2). Plaintiff did not complain of these problems to his superiors at the Police Department. (House Depo. at 45).

In October 1998, Plaintiff was suspended for ten days without pay for slapping a handcuffed prisoner. (House Depo. at 49-50, Ex. 7, 8, 9). Plaintiff claims that he does not remember slapping the prisoner. (House Depo. at 48, 50, 55, Ex. 8). Plaintiff was sent to Dr. Harry E. Berryman, Ph.D., for a psychological evaluation. (House Depo. at 48). Dr. Berryman sent a report of the evaluation to the City of Jackson, in which he stated that Plaintiff suffered from physical symptoms, such as headaches and gastrointestinal problems, that appeared to be stress related and supported the conclusion that Plaintiff might experience temporary memory or perceptual distortions under conditions of extreme stress. Id. at 81. Dr. Berryman recommended that Plaintiff could return to his normal duty as a patrol officer. Id. at 81-82.

In December 1998, Plaintiff was suspended for disobeying an order and neglect of duty, for failing to respond to an emergency response dispatch in reference to an assault and shooting. (House Depo. at 60-62, 77). Plaintiff explained that he was having problems responding because he was suffering from stress reactions and visual disturbances caused by the stress of his receiving the call. Id. at 63-64. He was placed on paid sick leave. Id. at 78. In January 1999, Plaintiff's treating psychologist Cynthia Schwartz, Ph.D, sent a letter to the City of Jackson explaining that he "suffer[ed] from post-traumatic stress disorder stemming from work-related exposure to dangerous situations." (Pl.'s Resp. Ex. C; House Depo. at 133). She stated that

3

Plaintiff's "mental disorder . . . prevent[ed] him from continuing in his current position of patrol officer." (Pl.'s Resp. Ex. C; House Depo. at 134). Dr. Schwartz believed that Plaintiff could not perform in positions that required him to be first-on-the-scene of ongoing crimes. (House Depo. at 134). In her evaluation, Dr. Schwartz commented that Plaintiff was paranoid, angry, and somatic and that "he [was] not safe to be on the streets." Id. at 118.

Plaintiff informed the Jackson Police Department that he was not physically able to continue as a patrol officer at that time. Id. at 98. Plaintiff applied for the positions of desk officer and investigator. According to Defendants, Plaintiff was not considered for either position because he could not meet the requirement that he be able to perform all essential functions of a patrol officer. (Mays Depo. at 49-50). In July 1999, the City notified Plaintiff of two available positions, one at central dispatch and the other as a security guard. (House Depo. at 158-59). Plaintiff rejected both positions. Plaintiff has exhausted all paid leave and remains on administrative leave without pay. Plaintiff alleges that Defendants failed to provide him with the reasonable accommodation of reassigning him from the position of patrol officer to the position of either desk officer or investigator after he notified Defendants that he suffered from a mental disability that prevented him from being first-on-the-scene in ongoing crimes. (Compl. ¶ 5, 9).

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of [that individual's] disability." 42 U.S.C. § 12112(a). Discrimination occurs when a covered employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation

4

would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

For "a qualified individual with a disability" to prove a prima facie case of discrimination under the ADA, the individual must show that he (1) is a disabled person under the ADA; (2) is qualified to perform the essential functions of the job he holds or desires with or without reasonable accommodation; and (3) suffered an adverse employment decision because of his disability. Burns v. Coca-Cola Enterprises, Inc., 222 F.3d 247, 253 (6th Cir. 2000). Thus, to recover under the ADA, Plaintiff must establish not only that he has a disability as defined under the ADA but also that he is a "qualified individual." Id. at 252-53. If Plaintiff cannot establish that he is qualified to perform, with or without an accommodation, the essential functions of a desk officer or investigator, then it is unnecessary for the court to determine whether plaintiff has a disability as defined under the ADA. Thus, the court will assume without deciding for purposes of this motion that Plaintiff is disabled within the meaning of the ADA.

Plaintiff admits that he is unable to perform the essential functions of a patrol officer, which include being first-on-the-scene in an ongoing crime or responding to emergency situations. (House Depo. at 118, 133-35; Pl.'s Resp. at 18). Instead, Plaintiff contends that he should be reassigned to the position of either desk officer or investigator. However, the written job descriptions for desk officer and investigator require the applicant to be able to perform all

of the essential functions of a patrol officer. Plaintiff argues that use of force and responding to high intensity emergencies are not essential functions of a desk officer or investigator because these jobs "do not require an individual to consistently or even irregularly respond to crimes, perform arrests, or use force." (Pl.'s Resp. at 29).

Since Plaintiff has challenged whether certain job criteria of a desk officer and investigator are essential, Defendants have the burden to demonstrate that the challenged job criteria are essential to the fundamental job duty. Hoskins v. Oakland County Sheriff's Department, 227 F.3d 719, 726 (6th Cir. 2000). Essential function means "the fundamental job duties of the employment position the individual with a disability holds or desires," not the marginal functions of the position. 29 C.F.R. § 1630.2(n)(1). The regulations enumerate the following factors, which are illustrative and not exhaustive, for the court to consider when determining whether a particular job function is essential:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job description prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3); see Hoskins, 227 F.3d at 726.

It is undisputed that Defendants maintain a written job description for both desk officers and investigators that requires all applicants to be able to meet every function of a patrol officer. (House Depo. Ex. 24, 25). The ADA does not require an employer to reassign a disabled

6

employee to a position for which he is not qualified nor does the ADA require "an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications." Burns, 222 F.3d at 257 (quoting Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 678 (7th Cir. 1998)) (internal quotation omitted). Plaintiff admits that the written job descriptions for desk officers and investigators provide that an essential function of both jobs is "to be able to meet every function of Patrol Officer - including use of force and even responding to high intensity emergencies." (Pl.'s Resp. at 28). However, Plaintiff contends that use of force and responding to high intensity emergencies should not be considered essential functions of a desk officer or an investigator because these positions are infrequently required to respond to crimes, perform arrests, or use force. Plaintiff claims that he "cannot recall ever seeing an Investigator or Desk Officer do these things." (Pl.'s Resp. at 29).

Defendant City of Jackson admits that it is a rare occurrence when a desk officer or an investigator must answer emergency calls. However, the Sixth Circuit has not determined that infrequency of performing a job function will automatically cause the function to be deemed not essential. See Hoskins, 227 F.3d at 727 ("Although a deputy-one may be required physically to restrain inmates only infrequently, the potential for physical confrontation with inmates exists on a daily basis, and the consequence of failing to require a deputy to perform this function when the occasion arises could be a serious threat to security."). The amount of time on the job devoted to performing the function is only one factor for the court to weigh in determining whether a job function is essential. Another factor that the court may consider is the consequences that could result by failing to require the employee to perform a particular job

7

function. For example, the regulations explain that "although a firefighter may not regularly have to carry an unconscious adult out of a burning building, the consequence of failing to require the firefighter to be able to perform this function would be serious." 29 C.F.R. Pt. 1630, App. § 1630.2(n). Desk officers and investigators are commissioned officers, which means they are authorized to carry guns and they have arrest powers. (Mays Depo. at 49-50). Although it is rare for a desk officer or investigator to respond to emergency situations or ongoing crimes, the very nature of police work makes it foreseeable that commissioned members of the police force, who are not assigned to patrol duties, may be needed in emergency situations to restore the peace and to protect the safety of citizens. Thus, after weighing all of the factors, the court holds that being able to perform the functions of a patrol officer is an essential function for the position of desk officer and investigator.

Alternatively, even if being able to perform the functions of a patrol officer is not an essential function for desk officers and investigators, Plaintiff is not able to perform all of the duties and responsibilities of these positions. The written job description for desk officer requires that the officer be able to interact with the public and to have constant contact with the public. A desk officer must "[t]ake reports and supplemental information on reports and walk-ins[, t]ake reports and supplemental information on reports by telephone[, h]andle front lobby security[, and m]aintain good public relations with individuals who seek help, assistance or information from the Jackson Police Department." (House Depo. Ex. 24). Plaintiff has admitted that his alleged disability affects his concentration, memory, and ability to interact with others. (Pl.'s Resp. at 16-17). These limitations would interfere with his ability to perform essential

8

functions of a desk officer. Plaintiff has offered no evidence that he could perform the functions of a desk officer with reasonable accommodations.

Additionally, an investigator must interact with members of the public, with other police department members, and with members of federal, state, and local agencies. Some of the responsibilities of an investigator include conducting thorough criminal investigations, processing crime scenes, managing all phases of the investigation, working closely with the District Attorney's office in preparing cases for court, exchanging information with other law enforcement agencies, cooperating in multi-agency investigations, completing thorough, accurate, and detailed investigative reports, and interacting with victims and witnesses. (House Depo. Ex. 25). Plaintiff's limitations in concentration, memory, and interaction with others would preclude him from being able to perform essential functions of an investigator. Therefore, even if the job requirement for a desk officer and investigator to be able to perform the functions of a patrol officer was determined not to be an essential function for these positions, Plaintiff by his own admission would be unable to perform the other undisputed essential functions of each of these positions.

Since Plaintiff has failed to establish that he is a qualified individual under the ADA, Defendants have successfully shown the absence of a genuine issue as to an essential element of Plaintiff's prima facie case in establishing discrimination under the ADA.[1] Consequently,

---

[1] In their motion for summary judgment, Defendants discuss a state law, Tennessee Code Annotated § 38-8-106, which requires police officers to "[b]e free from all apparent mental disorders as described in the Diagnostic and Statistical Manual of Mental Disorders, Third Editions (DSM-III) of the American Psychiatric Association." Section 38-8-105 of Tennessee Code Annotated makes the requirements in § 38-8-106 binding upon all municipalities. Plaintiff argues in its response to Defendants' motion for summary judgment that § 38-8-105 is unconstitutional. The United States has filed a brief as *amicus curiae* in response to Defendants' motion for summary judgment. It is

Defendants' motion for summary judgment is GRANTED, and this action is hereby dismissed.

IT IS SO ORDERED. The Clerk is directed to enter judgment accordingly.

_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

2/7/2001
DATE

---

unnecessary for the court to rule on the constitutionality of this state statute since it is not necessary to decide the present case. Therefore, to the extent that Plaintiff seeks relief under this statute, his claim is dismissed.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 38 in case 1:99-CV-01306 was distributed by fax, mail, or direct printing on February 7, 2001 to the parties listed.

Justin Gilbert
THE GILBERT FIRM
P.O. Box 2384
300 E. Main
Ste. 200
Jackson, TN 38302

Pamela L. Reeves
WATSON HOLLOW & REEVES
P.O. Box 131
800 South Gay St.
Ste. 1700
Knoxville, TN 37901

M. Christine Fotopulos
U.S. Department of Justice
Civil Rights Div/Dis
P.O. Box 66738
Washington, DC 20035

Honorable James Todd
US DISTRICT COURT